**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

```
                                  :
MICHAEL LASANE,                   :
                                  :    CIVIL ACTION NO. 08-4656 (MLC)
              Plaintiff,          :
                                  :
        v.                        :        O P I N I O N
                                  :
JOHN CORZINE, et al.,             :
                                  :
              Defendants.         :
 _____ :
```

**COOPER, District Judge**

Plaintiff, Michael Lasane, a prisoner confined at New Jersey
State Prison ("NJSP"), brings this action in forma pauperis under
42 U.S.C. § 1983, alleging violations of federal constitutional
rights.[1]  By Opinion and Order entered October 6, 2008, the Court
screened the Complaint, see 28 U.S.C. § 1915(e)(2)(B), dismissed
certain claims, and permitted to proceed only the claims against
the defendants George Hayman and Michelle Ricci arising out of
their alleged failure to comply with discharge instructions after
Lasane's August 2007 hospitalization.  Plaintiff submitted an
Amended Complaint on February 20, 2009.  Hayman and Ricci now
move for summary judgment in their favor.[2]

---

[1] To state a claim for relief under § 1983, a plaintiff must
allege (1) the violation of a right secured by the Constitution
or laws of the United States, and (2) that the violation was
committed or caused by a person acting under color of state law.
West v. Atkins, 487 U.S. 42, 48 (1988); Piecknick v.
Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

[2] In the Amended Complaint, Lasane reasserts claims against
defendant Ms. Bethea, which the Court previously dismissed for
failure to state a claim, and against defendant Dr. Leslie

## I.  BACKGROUND

Lasane, while confined at Garden State Correctional Facility in 1997, was struck by another inmate and suffered injuries to his front teeth and jaw.  Lasane was taken to a hospital in Trenton, New Jersey, where the personnel pulled three front incisors, stitched his upper lip, and placed a temporary wire brace on his jaw.  Thereafter, Lasane was taken to NJSP, where the temporary brace was removed.  Lasane alleges that, immediately thereafter, he began to experience pain in his jaw and requested treatment from prison medical staff.  Lasane was then transferred to NJSP in August 1998.  In response to his continuing complaints of pain, Dr. Leslie Hayling performed a root canal on his right front tooth.

An x-ray taken on August 28, 2007, revealed a cyst on the roof of Lasane's mouth, and he was transported to a hospital for its removal.  The cyst was removed and Lasane was discharged to NJSP the same day.  He was released with discharge instructions including prescriptions for a pain reliever and penicillin.  It

---

Hayling, which the Court previously dismissed as time-barred.  In the Amended Complaint, Lasane has failed to cure the deficiencies of the original Complaint as to these claims.  Accordingly, the claims against Bethea and Hayling will again be dismissed.

In the Amended Complaint, Lasane also asserts a claim against a defendant listed as Dr. Lee concerning statements made about potential treatment for Lasane's jaw and teeth.  Lasane has taken no steps to serve Dr. Lee for almost three years.  (See dkt. entry no. 21, Summons Returned Unexecuted 4-17-09.)  Lasane has also not identified the John Doe Defendants or provided service information as to them.  Accordingly, the Court will dismiss the claims against these defendants pursuant to Fed.R.Civ.P. 4(m).

is undisputed that Lasane received the medication as ordered. The discharge instructions also provided for a clear liquid diet immediately to be followed by a soft diet as tolerated.

Dr. Allen Martin forwarded on August 30, 2007, an order for a mechanically altered diet to NJSP's medical department.  It is undisputed that NJSP medical personnel sent the soft diet order to NJSP's dietary unit.

Lasane submitted an Inmate Request System and Remedy Form ("Remedy Form") on September 1, 2007, complaining that he had received only three modified/soft diet meals since his return from the hospital.  On September 11, 2007, Nurse Bethea responded to Lasane's Remedy Form stating that "follow-up care per the Dr.'s order was for 7 days only and your mechanical diet was only for 10 days."  Lasane did not administratively appeal from this response.

Lasane sent a letter to Hayman on September 3, 2007, complaining that he was not receiving a soft diet.  There is no evidence that Hayman ever saw this correspondence.[3]  On November 1, 2007, Sharon Felton of the Health Services Unit, Division of Operations, responded to the September 3 letter.  She forwarded Lasane's letter for review and response to Licensed Practitioner Nurse Catherine O'Donnell, Regional Ombudsman, Correctional Medical Services, who responded that, "on September 17, 2007 the soft diet and ensure that was prescribed by the dentist was

---

[3]  Lasane's copy of the letter shows that a copy was sent to Ricci.  But there is no evidence that Ricci ever saw the letter.

reordered for an additional ten days.  Furthermore, on October 1, 2007, the ensure order was again extended."  A copy of this response was forwarded to Hayman's office.  There is no evidence that Hayman ever saw this letter.

Lasane had a follow-up dental exam at a hospital on September 7, 2007, and the surgical area was found to be healing normally.

Lasane filed a Health Services Request Form on September 11, 2007, in which he stated that, "following surgery on my jaw on 8-28-07 I am having difficulties chewing food."  Lasane did not state in this form that he had not received the soft diet that was ordered.  On September 12, 2007, Nurse Brown talked to Lasane about the Health Services Request Form, noting on the response portion of the form that the soft diet had been ordered on August 30 for only ten days, and forwarded it to the prison dentist for follow-up.  On September 17, 2007, Dr. Lee saw Lasane and extended his order for a soft diet with Ensure for an additional ten days.[4]  Lasane's institutional medical records reflect that he received Ensure from September 18, 2007, to September 27, 2007.

Also on September 12, 2007, Lasane filed a second Inmate Request System and Remedy Form asserting that he still was not receiving the soft diet.  On September 19, 2007, Nurse Bethea responded to Lasane's Remedy Form, stating "[p]lease be advised,

---

[4] Thus, there is no evidence from the records submitted that Lasane was ordered a soft diet between September 8, 2007, when the original order expired, and September 17, 2007, when Dr. Lee entered an order for a soft diet.

you are no longer on a soft diet." Based on Dr. Lee's September 17 orders, this response appears to have been in error. But Lasane did not administratively appeal from this response.

Also on September 12, 2007, Lasane stopped Licensed Social Worker Larry Luken, told him that he was having difficulty eating solid foods, and requested that Luken contact the dentist and request that he be ordered a soft food diet.

On September 18, 2007, Lasane filed a Health Services Request Form in which he stated, "I previously submitted a medical request because I am having difficulty eating solid food following oral surgery on 8-28-07. Last week I was told by the nurse who responded to my request that I would receive the supplements. However, I have not been given the dietary supplement or a modified diet." This response noted that the issues had been addressed on September 17. Lasane's medical records reflect that, on September 23, the order for Ensure was re-sent to the compound nurse for distribution.

Lasane submitted a third Inmate Request System and Remedy Form on September 23, 2007, which he characterizes as "reiterating" the complaints made in his previous Inmate Request System and Remedy Forms.[5] The Remedy Form was returned to him unprocessed, with an Inmate Remedy System Corrective Action Form stating that he must first complete a Health Services Request Form.

_____

[5] No copy of the September 23, 2007, Inmate Request System and Remedy Form has been provided to the Court.

On September 30, 2007, Lasane filed a Health Services Request Form stating that he was still having difficulty eating, that he was not being fed "accordingly" through the pantry, and requesting a renewal of the Ensure.  On October 1, 2007, Registered Nurse Kathleen Skinner met with Lasane regarding this Health Services Request Form and forwarded it to Dr. Lee. Lasane's medical records reflect that on October 1, 2007, Lasane reported to Dr. Lee that he was still having difficulty biting hard and that he wanted to have some dietary supplement.  Dr. Lee ordered a renewal of the Ensure for one week.  Institutional medical records reflect that Ensure was given in accordance with the instructions for one week.

Lasane's medical records reflect that, on October 3, 2007, Lasane returned from biopsy follow-up with no complaints.  On October 6, 2007, a Consultation Report was received reflecting that it had been five weeks since Lasane's oral surgery and that he had no complaints, the biopsy area was healing well, and there were no signs or symptoms of infection or recurrent lesions.  The Report further noted that Lasane should avoid eating solid food with his anterior teeth.

On October 8, 2007, Dr. Lee examined Lasane and noted that his teeth were sound, without any movement, swelling, or pain. During that visit, Lasane requested to have the soft diet for another week.  Lasane's medical records do not reflect any complaint that he was not receiving the soft diet that had been

6

ordered on September 17.  Dr. Lee informed him that it would be his last soft diet, as a need for a soft diet was not indicated.

Lasane states in the Amended Complaint that "For several days the plaintiff was given meals that were being served to the general inmate population, that consisted of foods that the plaintiff could not eat, such as hamburgers, sandwiches etc." (Emphasis added.)[6]  Lasane asserts that the failure to follow these discharge instructions caused him to suffer unnecessary pain, discomfort and possibly permanent injury to his teeth.  He seeks compensatory and punitive damages as well as injunctive relief in the form of an order for future treatment of his teeth.

Discovery is complete.  Hayman and Ricci move for summary judgment on the grounds that Lasane has failed to exhaust his administrative remedies and that the claims are without merit.

## II.  SUMMARY JUDGMENT

### A.   Federal Rule of Civil Procedure 56

A district court shall grant summary judgment, as to any claim or defense, "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(a).  A party

---

[6] Lasane also states that he did not receive a periodontal rinse that was prescribed, but there is no evidence in the record that this was prescribed.  In any event, he never pursued any administrative remedies as to the alleged failure to provide the rinse, nor is there any evidence of any harm from the alleged failure to provide it.  To the contrary, all medical evidence submitted reflects that Lasane healed well from the oral surgery.

asserting that a fact cannot be, or is genuinely disputed, must support the assertion by citing to particular parts of materials in the record, or by showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.  Fed.R.Civ.P. 56(c)(1).  Nevertheless, the court may consider other materials in the record.  Fed.R.Civ.P. 56(c)(3).

Federal Rule of Civil Procedure 56(e) further provides that:

If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:

(1)   give an opportunity to properly support or address the fact;

(2)   consider the fact undisputed for purposes of the motion;

(3)   grant summary judgment if the motion and supporting materials - including the facts considered undisputed - show that the movant is entitled to it; or

(4)   issue any other appropriate order.

Fed.R.Civ.P. 56(e).

No genuinely triable issue of material fact exists when the movant shows – based on the submitted evidence, and viewing the facts in the light most favorable to the non-movant – that no rational jury could find in the non-movant's favor.  Ambruster v. Unisys Corp., 32 F.3d 768, 777 (3d Cir. 1994).  Thus, the threshold enquiry is whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either

8

party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250
(1986).  In deciding whether triable issues of material fact
exist, a court must view the underlying facts and draw all
reasonable inferences in favor of the non-movant.  See Matsushita
Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

Once the movant has properly supported a showing of no
triable issue of fact and of an entitlement to judgment as a
matter of law, the "opponent must do more than simply show that
there is some metaphysical doubt as to the material facts."
Matsushita, 475 U.S. at 586 (citations omitted); see Anderson,
477 U.S. at 247-48 ("By its very terms, this standard provides
that the mere existence of some alleged factual dispute between
the parties will not defeat an otherwise properly supported
motion for summary judgment; the requirement is that there be no
genuine issue of material fact.").

What the non-movant must do is "go beyond the pleadings and
by [its] own affidavits, or by the 'depositions, answers to
interrogatories, and admissions on file,' designate 'specific
facts showing that there is a genuine issue for trial.'"  Celotex
Corp. v. Catrett, 477 U.S. 317, 324 (1986); see Big Apple BMW v.
BMW of N. Am., 974 F.2d 1358, 1363 (3d Cir. 1992) ("To raise a
genuine issue of material fact, ... the opponent need not match,
item for item, each piece of evidence proffered by the movant,"
but must "exceed[] the 'mere scintilla' threshold and ... offer[]
a genuine issue of material fact.").

9

A movant need not affirmatively disprove the other party's case; the movant may move on the ground that the non-movant lacks evidence "sufficient to establish the existence of an element essential to that party's case." <u>Celotex</u>, 477 U.S. at 322-23. Nevertheless, again, it is not sufficient to support a motion with only conclusory assertions that the non-movant has no evidence to prove a case.

**B.    Local Civil Rule 56.1**

Local Civil Rule 56.1(a) requires that on summary judgment motions, both the movant and non-movant furnish a statement identifying what each side deems to be the material facts, so that the Court can determine if a genuine dispute exists.  The commentary to the Rule notes that "[t]he Rule 56.1 statement is viewed by the Court as a vital procedural step, since it constitutes and is relied upon as a critical admission of the parties."  The commentary specifies the content and format of the statement: e.g., the assertions must be set out in separately numbered paragraphs; each fact must be supported by a citation to an affidavit.  Here, both parties have supplied statements of material facts for the Court's consideration.

**III.   ANALYSIS**

**A.    Exhaustion of Administrative Remedies**

Hayman and Ricci move for summary judgment on the ground that Lasane has failed to exhaust his administrative remedies. The relevant statute, 42 U.S.C. § 1997e(a), provides:

10

> No action shall be brought with respect to prison
> conditions under section 1983 of this title, or any
> other Federal law, by a prisoner confined in any jail,
> prison, or other correctional facility until such
> administrative remedies as are available are exhausted.

The exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002) (citation omitted).  Exhaustion is mandatory.  A prisoner must exhaust all available administrative remedies even where the relief sought, such as monetary damages, cannot be granted through the administrative process. Booth v. Churner, 532 U.S. 731 (2001).

Section 1997e(a) requires "proper exhaustion," as that term is used in administrative law. Woodford v. Ngo, 548 U.S. 81, 90-93 (2006).  "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules." Id. at 90-91. Compliance with the prison grievance procedures is all that is required for "proper exhaustion."  "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements . . . that define the boundaries of proper exhaustion." Jones v. Bock, 549 U.S. 199, 218 (2007) (holding exhaustion was not per se inadequate simply because individual later sued was not named in grievance, where prison policy did not require prisoner to identify particular responsible party); see Spruill v. Gillis,

372 F.3d 218, 231 (3d Cir. 2004) (prison grievance procedures supply yardstick for determining required steps for exhaustion).

The exhaustion requirement includes a procedural default component.  See id. at 230.  A court may consider extrinsic materials for determining whether a procedural default should be excused.  See Williams v. Beard, 482 F.3d 637 (3d Cir. 2007).

Hayman and Ricci have provided a copy of the Inmate Handbook in effect during the time of the events in issue.  (Motion, Decl. of Christopher Holmes, Ex. B).[7]  The Introduction to the Handbook provides that it is furnished as a guide outlining "many" of the institution's policies and procedures and that it is "impossible" to cover every area of prison life.  The administrative-remedies portion provides that problems or complaints must first be handled through "regular procedures" or by using the Inmate Request Form or the interview process.  Thus here, the initial route for resolution of Lasane's health-care complaints was utilization of the Health Services Request Form.  If those initial procedures do not resolve the problem, the inmate should use the administrative Remedy Form.  The Administrative Remedy process is described as the "final step" in resolving problems within the institution before applying to the courts.  The Handbook provides that

---

[7]  Hayman and Ricci also provide a copy of a Handbook revision.  Christopher Holmes, in his Declaration, describes the administrative appeal procedures applicable here, which mirror those set forth in the revision.

12

administrative Remedy Forms will be processed within 30 days, and makes no mention of an appeals process.

But the individual Inmate Request System and Remedy Forms used by Lasane do show that an appeal process exists.  Of the five-part one-page form, Part 1 is the Inmate's Request or Complaint Area, Part 2 is the Coordinator's review and referral area, Part 3 is the Staff Response Area, Part 4 is the Inmate's Remedy Appeal Information area, and Part 5 is the Appeal Decision area.  The form also indicates the copies to be used for the appeal process.

The Handbook revision, by contrast, specifically explains that the inmate may appeal a staff response to an Inmate Request System and Remedy Form, requires that the appeal be submitted within ten days of the date the staff response is returned to the inmate, sets forth the procedures for submitting an appeal, and provides that an institutional decision on an appeal completes the process at the institutional level.  As noted above, in his Declaration, Christopher Holmes states that these were the procedures in place at the relevant times.

It is undisputed that the administrative appeal process described above (consisting of an initial departmental Request Form, followed by submission of a Remedy Form, followed by one level of review within the institution) existed when Lasane submitted his various Inmate Request System and Remedy Forms.

13

(See Motion, Defs. Statement of Material Facts, ¶¶ 16-21; Lasane Br. in Opposition to Defs. Motion for Summary Judgment, Counter Statement of Material Facts (in which Lasane "admits" factual allegations made in Paragraphs 1 through 49 of defendants' Statement of Material Facts).)

Lasane does not dispute the existence of the institutional administrative appeal process, as to the Inmate Request System and Remedy Forms,[8] and it is also undisputed that Lasane did not appeal the staff responses to any of the Inmate Request System and Remedy Forms.  Nevertheless, Lasane contends that he exhausted all "available" administrative remedies because Nurse Bethea's inaccurate response to his September 12 Inmate Request System and Remedy Form, that he was no longer entitled to a soft diet, "prevented" him from appealing that response.  Lasane also contends that prison officials' refusal to process his September 23, 2007, Inmate Request System and Remedy Form "prevented" him from exhausting his administrative remedies.

The Court disagrees.  The notion that an incorrect staff decision "prevents" an inmate from appealing is antithetical to the fact that the appeal process exists precisely for the purpose of reviewing and curing incorrect decisions.  Nor did the refusal to process the September 23 Inmate Request System and Remedy Form

_____

[8] The parties agree that there is not any independent appeal process with respect to the Health Services Request Forms.

prevent Lasane from exhausting administrative remedies.  That response could have had no effect on the failure to appeal from the two earlier Remedy Forms; had Lasane appealed those first two Remedy Forms, he might have obtained timely relief in the form of the soft meals he desired.[9]  The refusal to process the September 23 Remedy Form also was proper as Lasane had not complied with the policy requirement that he pursue an initial departmental Health Services Request Form <u>before</u> filing the Inmate Request System and Remedy Form.  Contrary to his characterization, this refusal to process the improperly filed Remedy Form was, in fact, an attempt on the part of prison officials to ensure that Lasane <u>did</u> properly exhaust administrative remedies, step by step, <u>not</u> an attempt to thwart him in exhausting those remedies.

The undisputed facts demonstrate that Lasane failed to exhaust his administrative remedies, regarding provision of soft meals, before bringing his claims to the Court.  Hayman and Ricci are thus entitled to summary judgment.

**B.   Eighth Amendment Claim**

Hayman and Ricci also seek summary judgment on the merits. To the extent Lasane could establish that he properly exhausted

---

[9]   Paradoxically, Lasane argues that his Remedy Forms should not have been referred to the medical department, as they were powerless to compel the dietary unit to provide the soft meals that had been ordered by medical personnel.  If so, all the more reason for Lasane to have appealed the response of the medical department, in order to obtain relief from a reviewing official with the authority to order that the soft meals be provided.

administrative remedies, the undisputed facts demonstrate that he cannot establish that these defendants violated his Eighth Amendment right to adequate medical care.

The Eighth Amendment to the United States Constitution, applicable to the individual states through the Fourteenth Amendment, prohibits the states from inflicting "cruel and unusual punishments" on those convicted of crimes.  Rhodes v. Chapman, 452 U.S. 337, 344-46 (1981).  This proscription requires that prison officials provide inmates with adequate medical care.  Estelle v. Gamble, 429 U.S. 97, 103-04 (1976).  To set forth a cognizable claim for a violation of his right to adequate medical care, an inmate must allege: (1) a serious medical need; and (2) behavior on the part of prison officials constituting deliberate indifference to that need.  Id. at 106.

The inmate must show that the medical needs are serious.  "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'"  Hudson v. McMillian, 503 U.S. 1, 9 (1992).  Serious medical needs include those that have been diagnosed by a physician as requiring treatment or that are so obvious that a lay person would recognize the necessity for medical attention, and those conditions which, if untreated, would result in lifelong handicap or permanent loss.  Monmouth Cnty. Corr. Inst'l Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987).

The inmate also must show that prison officials acted with deliberate indifference to the serious medical need. "Deliberate indifference" is more than mere malpractice or negligence; it is a state of mind equivalent to reckless disregard of a known risk of harm. Farmer v. Brennan, 511 U.S. 825, 837-38 (1994). Also, a prisoner's subjective dissatisfaction with medical care does not in itself indicate deliberate indifference. Andrews v. Camden County, 95 F.Supp.2d 217, 228 (D.N.J. 2000). Similarly, "mere disagreements over medical judgment do not state Eighth Amendment claims." White v. Napoleon, 897 F.2d 103, 110 (3d Cir. 1990). "Courts will disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment ... [which] remains a question of sound professional judgment. Implicit in this deference to prison medical authorities is the assumption that such informed judgment has, in fact, been made." Inmates of Allegheny Cnty. Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979) (internal quotation and citation omitted). Even if a doctor's judgment concerning the proper course of a prisoner's treatment ultimately is shown to be mistaken, at most what would be shown is medical malpractice and not an Eighth Amendment violation. Estelle, 429 U.S. at 105-06; White, 897 F.2d at 110.

"Where prison authorities deny reasonable requests for medical treatment, however, and such denial exposes the inmate 'to undue suffering or the threat of tangible residual injury,'

deliberate indifference is manifest.  Similarly, where 'knowledge of the need for medical care [is accompanied by the] ... intentional refusal to provide that care,' the deliberate indifference standard has been met.  ...  Finally, deliberate indifference is demonstrated '[w]hen ... prison authorities prevent an inmate from receiving recommended treatment for serious medical needs or deny access to a physician capable of evaluating the need for such treatment." Lanzaro, 834 F.2d at 346 (citations omitted).  "Short of absolute denial, 'if necessary medical treatment [i]s ... delayed for non-medical reasons, a case of deliberate indifference has been made out." Id. (citations omitted).  "Deliberate indifference is also evident where prison officials erect arbitrary and burdensome procedures that 'result[] in interminable delays and outright denials of medical care to suffering inmates.'" Id. at 347 (citation omitted). Compare Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993) (summary judgment properly granted to prison warden and state corrections commissioner, the only allegation being that they failed to respond to letters from prisoner complaining of prison doctor's treatment decisions) with Spruill, 372 F.3d at 236 (non-physician supervisor may be liable under § 1983 if he knew or had reason to know of inadequate medical care).

Supervisors are not liable under § 1983 solely on a theory of respondeat superior. See City of Okla. City v. Tuttle, 471 U.S. 808, 824 n.8 (1985); Natale v. Camden Cnty. Corr. Fac., 318

F.3d 575, 583-84 (3d Cir. 2003).  "A defendant in a civil rights action must have personal involvement in the alleged wrongs, liability cannot be predicated solely on the operation of respondeat superior.  Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence."  Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) (citations omitted); accord Robinson v. City of Pittsburgh, 120 F.3d 1286, 1293-96 (3d Cir. 1997); Baker v. Monroe Twp., 50 F.3d 1186, 1190-91 (3d Cir. 1995).

Hayman and Ricci have asserted that they had no personal knowledge that Lasane was not receiving a soft diet as ordered by his doctors.  Lasane has come forward with no evidence to contradict those denials.  To the contrary, all evidence submitted by all parties as to Lasane's administrative grievances and letters reflects Hayman and Ricci were not aware of Lasane's complaints, and thus cannot be held liable.  Accordingly, Hayman and Ricci are entitled to summary judgment as to the claim that Lasane did not receive appropriate meals and/or nutritional supplements after his oral surgery.[10]

---

[10]  The same result obtains if the claim that Lasane was denied a suitable diet is construed as an Eighth Amendment "conditions of confinement" claim.  As with any other type of Eighth Amendment claim of cruel and unusual punishment, Lasane must establish that the defendants acted with "deliberate indifference."  He has failed to present any evidence of such deliberate indifference or even of personal knowledge that he was not receiving appropriate meals.

## C.   Request for Injunctive Relief

To the extent the Complaint could be construed as seeking injunctive relief from Hayman and Ricci for future treatment of problems with Lasane's teeth and jaw, Lasane has failed to show any entitlement to injunctive relief.

Injunctive relief is an "extraordinary remedy, which should be granted only in limited circumstances." Novartis Consumer Health v. Johnson & Johnson-Merck Consumer Pharms. Co., 290 F.3d 578, 586 (3d Cir. 2002) (quotation and citation omitted).  To obtain interim relief, a movant must demonstrate both a likelihood of success on the merits and the probability of irreparable harm absent the injunction. Frank's GMC Truck Ctr. v. Gen. Motors Corp., 847 F.2d 100, 102 (3d Cir. 1988).  Thus, in determining whether to issue a preliminary injunction, the Court must consider whether: (1) the movant has shown a reasonable probability of success on the merits; (2) the movant will be irreparably injured by denial of the relief; (3) granting the preliminary relief will result in even greater harm to the nonmoving party; and (4) granting the preliminary relief is in the public interest. BP Chems. Ltd. v. Formosa Chem. & Fibre Corp., 229 F.3d 254, 263 (3d Cir. 2000).  The Court should issue a preliminary injunction "only if the plaintiff produces evidence sufficient to convince the district court that all four factors favor preliminary relief." AT&T Co. v. Winback & Conserve Program,  42 F.3d 1421, 1427 (3d Cir. 1994) (citation omitted);

20

see Nutrasweet Co. v. Vit-Mar Enters., 176 F.3d 151, 153 (3d Cir. 1999) (noting movant's failure to establish any one of four elements renders preliminary injunction inappropriate).  To obtain permanent injunctive relief, such as Lasane has requested, a plaintiff must show "actual success" on the merits, rather than "a likelihood of success on the merits."  Amoco Production Co. v. Vill. of Gambell, 480 U.S. 531, 546 n.12 (1987).

Lasane has failed to present any evidence to suggest that Hayman and Ricci are involved in his medical decisions or in the making of policy as to treatment of conditions like his; nor has he presented any evidence suggesting the need for any particular treatment; nor has Lasane presented any evidence suggesting that he exhausted administrative remedies as to any continuing need for treatment of problems with his teeth and jaw.  Hayman and Ricci are thus entitled to summary judgment with respect to the claim for injunctive relief.

## IV.  CONCLUSION

The Court will grant summary judgment in favor of the Hayman and Ricci, and will dismiss the claims against Bethea, Hayling, Lee, and the John Doe defendants.  The Court will issue an appropriate order and judgment.

        s/ Mary L. Cooper
**MARY L. COOPER**
United States District Judge

Dated:  December 23, 2011